**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOHNNIE MITCHELL, Petitioner,

vs.

ROBERT HILDRETH, *et al.*, Respondents.

2:02-cv-01470-PMP-PAL

**ORDER**

This action is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by a Nevada state prisoner represented by counsel. This matter comes before the Court on the merits of the remaining claims of the amended petition and on petitioner's motion for decision.

**I. Procedural History**

This case stems from events involving the robbery of the San Remo Hotel and Casino in Las Vegas, Nevada. On June 13, 1994, petitioner was charged, by way of an information, with one count of attempted murder with the use of a deadly weapon, one count of burglary with in possession of a deadly weapon, one count of conspiracy to commit robbery, one count of robbery

with the use of a deadly weapon, and one count of possession of a firearm by an ex-felon. (Exhibit 10).[1] The jury returned verdicts of guilty on all counts except possession of a firearm by an ex-felon. (Exhibits 28 & 35). The judgment of conviction was entered August 31, 1995. (Exhibit 35).

On September 13, 1995, petitioner filed a notice of appeal from the judgment of conviction. (Exhibit 37). On December 30, 1998, the Nevada Supreme Court affirmed petitioner's conviction. (Exhibit 55).

On November 17, 1999, petitioner filed a state habeas petition in the Eighth Judicial District Court. (Exhibit 71). On August 9, 2001, the state district court entered its Findings of Fact, Conclusions of Law, and Order, in which it denied the petition. (Exhibit 97). On August 17, 2001, petitioner filed a notice of appeal. (Exhibit 99). On January 11, 2002, the Nevada Supreme Court affirmed the district court's denial of the petition. (Exhibit 103). Remittitur issued August 6, 2002. (Exhibit 105).

Proceeding in *pro per*, petitioner filed a federal habeas petition in this Court, pursuant to 28 U.S.C. § 2254. The petition was filed on November 7, 2002. (Docket #1). The Court appointed the Office of the Federal Public Defender to represent petition, by order filed November 26, 2002. (Docket #3). On June 13, 2003, the Federal Public Defender filed an amended habeas petition. (Docket #12). Respondents moved to dismiss the petition on March 23, 2004. (Docket #21). Petitioner then moved for a stay so that he could return to state court to exhaust claims. (Docket #24). On June 15, 2004, the Court granted petitioner's motion to stay the case. (Docket #26). Petitioner returned to state court and received substantial relief in the state court proceedings, including the vacatur of his conviction for attempted murder with the use of a deadly weapon. (Docket #27, at Exhibit 119; Docket #28; Docket #34). Petitioner returned to this Court to pursue

---

[1] The exhibits referenced in this order are found in the Court's record at Docket #13, 14, and 27.

certain grounds of the amended habeas petition. (Docket #27). By order filed July 7, 2007, this Court noted that petitioner was pursuing only Grounds 4, 7, 9, 11(e), and 12(b). (Docket #28).

On August 29, 2007, respondents move to dismiss the remaining grounds of the amended petition. (Docket #30). On January 2, 2008, this Court granted the motion and denied relief on the amended petition. (Docket #34). In the order of January 2, 2008, the Court did not address Grounds 11(e) and 12(b).[2] The Court held that Ground 4 was procedurally defaulted, Ground 7 failed to state a claim for failure to plead facts, and that Ground 9 failed to state a claim. (Docket #34).

Petitioner appealed this Court's decision. (Docket #36). In a memorandum opinion filed April 3, 2009, the United States Court of Appeals for the Ninth Circuit affirmed the dismissal of Grounds 4 and 9. (Docket #46). The Court of Appeals reversed the dismissal of Ground 7, and noted that this Court failed to address the merits of Grounds 11(e) and 12(b) of the petition. (*Id.*). On June 29, 2009, this Court directed respondents to answer the remaining grounds as indicated in the Court of Appeals' opinion. (Docket #51). Respondents filed an answer on August 20, 2009. (Docket #53). Petitioner, through the Federal Defender's Office, filed a reply on September 14, 2009. (Docket #55). Petitioner further filed a motion for decision on December 15, 2010. (Docket #56).

## II. Federal Habeas Corpus Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not

[2] In declining to address Grounds 11(e) and 12(b), the Court noted that "petitioner concedes that Grounds 11(e) and 12(b) are exhausted." The Court intended to state that those grounds were unexhausted. However, on further review, the Court recognizes that Grounds 11(e) and 12(b) are, in fact, exhausted.

> be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v.*

*Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**III. Discussion**

**A. Ground 7**

In the amended petition, Ground 7 is entitled: "By introducing incriminating statements obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966), the State violated Mitchell's right against self-incrimination protected by the Fifth Amendment to the United States Constitution." (Amended Petition, Docket #12, at p. 19). The incriminating statements were the product of an exchange between petitioner and two Las Vegas detectives, at Soledad Prison in California, where he was serving a sentence on an unrelated conviction. During the conversation, petitioner admitted that he had gone to the San Remo hotel, the site of the crimes, with the co-conspirators on the morning of the robbery, but was unaware of the others' plan to commit robbery.[3] (Exhibit 55, at p. 5). The detectives testified to the incriminating statements made by petitioner. (*Id.*, at p. 7).

It is undisputed that petitioner was questioned and that the detectives did not give petitioner a *Miranda* warning. The issues for this Court are: (1) whether petitioner was "in custody" for purposes of invoking *Miranda* and (2) whether the admission of petitioner's statements substantially prejudiced the outcome of the trial, or whether it was harmless error.

*Miranda* warnings must proceed "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The *Miranda* rule has been held applicable in the prison context. *Mathis v.*

---

[3] The underlying facts of this case involve the robbery of the San Remo Hotel and Casino in Las Vegas, Nevada.

*United States*, 391 U.S. 1, 4 (1968). However, the United States Supreme Court has not determined whether a prison setting, without more, constitutes "custody" for *Miranda* purposes. *See United States v. Turner*, 28 F.3d 981, 983 (9th Cir. 1994) ("We have declined to establish a per se rule that a defendant is in "custody" simply because that defendant is in prison."); *see also Cervantes v. Walker*, 589 F.2d 424, 427 (9th Cir. 1979) (holding that the *Mathis* decision did not create a rule that "interrogation during prison confinement constitutes custodial interrogation requiring *Miranda* warnings."). Rather, to determine whether *Miranda* warnings are necessary in a prison setting, courts "look to some act which places further limitations on the prisoner." *Turner*, 28 F.2d at 983. Courts consider "the language used to summon the individual, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and the additional pressure exerted to detain him . . . to determine whether a reasonable person would believe there had been a restriction of his freedom over and above that in his normal prisoner setting." *Turner*, 28 F.3d at 983 (citing *Cervantes v. Walker*, 589 F.2d at 428).

When the Nevada Supreme Court addressed this issue on direct appeal, it held that petitioner's statements were admissible, determining that petitioner was not in custody, citing *United States v. Turner*, 28 F.3d 981 (9th Cir. 1994). The Nevada Supreme Court found that:

> The two-hour interview at Soledad Prison took place in an unlocked room, Mitchell was not under arrest for the San Remo robbery at the time, and the detectives testified that they told Mitchell that although he was a suspect in the robbery, he could leave the interview at any time.

(Exhibit 55, at p. 9).[4] The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). The Nevada Supreme Court's decision was based on application of the facts to clearly

---

[4] The Court notes that at trial, petitioner described being questioned by the detectives in an unlocked room within the prison law library. Petitioner testified that the detectives never told him he was free to leave, but the detectives claimed they did. (Exhibit 27, p. 76). This discrepancy is of no consequence in these proceedings, as this Federal Court will not rehear factual determinations that were previously made in state court. Factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1).

established federal law. Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Moreover, alleged violations of *Miranda* are subject to harmless error analysis. *United States v. Khan*, 993 F.2d 1368 (9th Cir. 1993); *Brecht v. Abrahmson*, 507 U.S. 619 (1993). The use of petitioner's statements at trial was harmless. Petitioner testified that he was at the hotel at the time of the crime. The testimony of the detectives regarding this fact was duplicative. Additionally, the security guard, Colin Keel, and the cashier, Wilma Beck, identified petitioner as one of the perpetrators jumping into the casino money cage during the crime spree. (Exhibit 55, at pp. 2, 3). As such, any error that may have occurred regarding the detectives' failure to give petitioner *Miranda* warnings was harmless error. This Court denies habeas relief as to Ground Seven.

**B. Grounds 11(e) and 12(b)**

In Ground 11(e), petitioner asserts that his trial counsel was ineffective for failing to move to sever the charge of being an ex felon in possession of a firearm from the remaining charges. (Amended Petition, Docket #12, at p. 27). Ground 12(b) likewise asserts that appellate counsel was ineffective for failing to challenge the district court's failure to sever the ex felon in possession of a firearm charge from the remaining charges. (*Id.*, at p. 30).

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor*, 529 U.S. 362, 390-391 (2000) (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective

standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (quotations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The *Strickland* standard applies to challenges of effective appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Appellate counsel has no constitutional duty to raise every non-frivolous issue requested by the client. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

In ruling on petitioner's ineffective assistance of counsel claims, the Nevada Supreme Court found no ineffective assistance of counsel and denied relief. (Exhibit 103). The Court denied relief on grounds that its decision in *Brown v. State*, 114 Nev. 1118 (1998), requiring severance in such circumstances, was a subsequent decision and was explicitly not retroactive. (Exhibit 103, at pp. 2-3, 8).

Petitioner argues that federal law established a basis for severance of the charges, citing *United States v. Lane*, 474 U.S. 438 (1986), in which the Court stated, in a footnote, that severance of charges may be required "if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Id.* at 466, n.8. This Court has determined that counsel's failure to move to sever the charge of being an ex felon in possession of a firearm from the remaining charges did not prejudice petitioner so much that it denied him a fair trial. This Court has also determined that appellate counsel's failure to challenge the district court's failure to sever the ex felon in possession of a firearm charge from the remaining charges did not prejudice petitioner so much that it denied him a fair trial. Neither trial counsel nor appellate counsel's performance fell below an objective standard of reasonableness under prevailing norms. Nor has petitioner satisfied the prejudice prong of the *Strickland* analysis, as he has not shown that, but for the alleged errors of counsel, the outcome of the proceeding would have been different.

Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court denies relief on Grounds 11(e) and 12(b).

**IV. Certificate of Appealability**

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529

U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny petitioner a certificate of appealability.

**V. Conclusion**

**IT IS THEREFORE ORDERED** that petitioner's motion for a decision (Docket #56) is **GRANTED.**

**IT IS FURTHER ORDERED** that the amended petition for a writ of habeas corpus is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

DATED: January 13, 2011.

PHILIP M. PRO
United States District Judge